UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONATO NIRO and SHIRELY NIRO,  )<br>              Plaintiffs,  )<br>                    )<br>   v.  )<br>                    )<br>                    )<br>INTERNAL REVENUE SERVICE,  )<br>              Defendant.  )<br>                    ) | CIVIL ACTION<br>NO. 17-40099-TSH |

**MEMORANDUM OF DECISION AND ORDER**
**March 8, 2019**

**HILLMAN, D.J.**

### Introduction

Donato Niro ("D. Niro") and Shirley Niro (together with D. Niro, "Plaintiffs" or "Niros") filed a Complaint (Docket No. 1) against the Internal Revenue Service ("IRS") under the Freedom of Information Act, 5 U.S.C. §552 ("FOIA") seeking disclosure and release of agency records they allege were improperly withheld from then in regards to the audit of their 2010, 2011 and 2013-2015 tax returns.

In support of this request, the Niros assert that beginning in 2013, the IRS began auditing their tax returns, first for the years 2010 and 2011, and thereafter, for the 2013-2015 tax years. The audit of the Niros' tax returns was apparently prompted by their having claimed deductions in the amount of $570,000, which the IRS disallowed.  D. Niro  a former IRS employee,

subsequently wrote the IRS seeking copies of the case files of the Revenue Agent conducting the audits. D. Niro does not feel that the FOIA coordinator complied with his request. More specifically, he asserts that information was wrongfully withheld on the grounds that he was under criminal investigation, which D. Niro alleges was untrue. D. Niro continued to file FOIA requests as he was suspicious of the motivation for the audits. Based on his former employment with the IRS, D. Niro contends that he is aware of what types of case notes and documentation are generally maintained by IRS Revenue Agents and other IRS employees involved in the IRS process. The Plaintiffs further contend that they have requested such case notes and documentation and have not been provided the same.

     The Niros assert that they were targeted for audit by the IRS because they were members of, or had contributed to, various conservative organizations that were hostile to the Obama administration. D. Niro also asserts that he was targeted for audit because he was a former IRS whistle blower. More specifically, D. Niro asserts that when he was working as an IRS Group Manager in the IRS Criminal Investigation Unit, first in Providence, Rhode Island and later in Brockton, Massachusetts, he became aware of and/or reported a number of serious allegations of improprieties involving senior IRS executives.

     By their Complaint, the Plaintiffs seek to obtain records requested from the IRS relative to the audit of their tax returns. On July 27, 2018, the IRS filed its Motion for Summary Judgment (Docket No. 24) in which it argued that the undisputed facts establish that: (1) it has performed an adequate search for the records responsive to Plaintiffs' FOIA request; and (2) properly withheld a limited number of pages that are exempt from disclosure. For the reasons set for the below, I find that the IRS has complied with its obligations under the FOIA and therefore, the motion for summary judgment is *granted*.

**Standard of Review**

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted).

"'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

"In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. Because the court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, summary judgment for an agency is only appropriate after the agency proves that it has 'fully discharged its [FOIA] obligations.'" *Neuman v. United States,* 70 F. Supp. 3d 416, 421–22 (D.D.C. 2014)(internal citations and citation to quoted case omitted); *see also Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006)( "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions, and district courts are required to make de novo determinations as to the validity of the asserted exemptions."(internal citation omitted)).

### Facts[1]

Procedural History

By letter dated January 23, 2017, the Plaintiffs submitted a FOIA request to the IRS seeking four categories of documents: (1) All records relating to the examination of their 2013 and 2014 taxes; (2) certain specific records relating to the examination of their 2010 and 2011 taxes; (3) records related to the purported denial of their appeal rights; and (4) records related to the purported dissemination of their tax information to other government agencies. On or about January 27, 2017, Kimberly Wilson ("Wilson"), a Disclosure Specialist for the IRS in the

---

[1] In its Statement of Undisputed Material Facts (Docket No. 24), the IRS cites primarily to: (1) the declaration of Kimberly Wilson, a Disclosure Specialist in the Government liaison, Disclosure & Safeguards, Disclosure Field West Area, Disclosure Office 14 in Oakland, California (Docket No. 24-2)("Wilson Declaration"); and (2) the declarations of Lowell Thomas, a docket attorney in Branch 6 of the Office of the Associate Chief Counsel (Procedure and Administration) for the Internal Revenue Service (Docket Nos. 24-3 and 34-1)("Thomas Declarations"). Plaintiffs did not provide a concise statement of material facts of record as to which they contend there exists a genuine issue to be tried, with page references to affidavits, depositions or other documentation.

Government Liaison, Disclosure & Safeguards, Disclosure Field West Area, Disclosure Office in Oakland, California ("Disclosure Office"), was assigned to handle Plaintiffs' request. Wilson has held this position since June 15, 1997.

As part of her official duties, Wilson processes and coordinates searches for documents responsive to FOIA requests. Because the Plaintiffs' request was seeking information regarding an examination of a taxpayer, Wilson began her search by using the IRS's Integrated Data Retrieval System ("IDRS"), which is a system that consists of computer databases and programs that support IRS employees working active tax cases within each business function across the entire organization. This system manages data that has been retrieved from the Master File, allowing IRS employees to take specific actions on taxpayer accounts, track status, and post transaction updates to the Master File. The Master File System is the IRS's nation-wide electronic system containing taxpayer account information. The Non-Master File System is designed to electronically store temporary taxpayer information. When temporary taxpayer information is complete, it is transferred to the Master File System.

Wilson began her search for potentially responsive records by searching IDRS using the following Command Codes in conjunction with the Social Security Numbers ("SSNs") provided by Plaintiffs in the FOIA request: INOLET (displays name line and address information for all accounts with the same taxpayer information number ("TIN")), IMFOLI (to retrieve an index of all the tax modules of the input SSNs), SUMRY (requests a summary of all Taxpayer Information File ("TIF") modules available for a particular TIN), AMDIS (displays a summary of the Audit Information Management System File), AMDISA (displays up to six screens of information about the taxpayer's account for a specific tax period), and IMFOL with definers I, S and T. The IMFOL command displays read-only access to the Individual Master File.

Wilson also searched the Disclosure Office's shared drive for responsive records. Wilson determined that IDRS showed no open or closed Appeal actions for tax years 2010, 2011, 2013, or 2014, but that the account was in open examination for tax years 2013 and 2014, and that there were closed examination files for 2010 and 2011. Wilson requested the files responsive to Plaintiffs' request through the examination group with responsibility for the Plaintiffs' examinations. Those files consisted of 722 pages that Wilson determined to be responsive to Plaintiffs' request. Wilson did not find any records responsive to Plaintiffs' request for specific documents relating to their 2010 and 2011 examinations; nor did she find any records responsive to the Plaintiffs' request for specific documents related to the alleged appeals they made for any of the tax years at issue, or any records relating to the Plaintiffs' request for records related to what, if any, government agencies their tax information had been disseminated to.

During the course of her review of these documents, Wilson determined that 713 pages could be released to the Plaintiffs in full. The IRS initially withheld nine pages in full. After the Plaintiffs filed their Complaint, the IRS instructed the Department of Justice ("DOJ") to release six of the nine withheld pages to them. The DOJ made this release on October 18, 2017. Accordingly, the total pages of responsive records released to the plaintiffs is 719. The total pages of responsive records withheld in full is three.

<u>Claimed Exemptions</u>

Of the 722 pages ultimately determined to be responsive to Plaintiffs' FOIA request, the IRS has released 719, and withheld three pages in full. The IRS is withholding this record pursuant to FOIA Exemption 5 on the grounds that they are protected by the attorney-client privilege and attorney work-product privilege. More specifically, the IRS is withholding a three-page settlement memorandum pages in full pursuant to Exemption 5 under the attorney-client

privilege. Such records include material that is protected by the attorney-client privilege. The Service is withholding a settlement memorandum prepared by two IRS attorneys for review by IRS personnel. This record contains advice and legal analysis received by the revenue officer from counsel and refers to confidential information disclosed to the attorneys by the revenue officers. The IRS is also withholding the three-page settlement memorandum pursuant to the attorney work-product privilege. This record was prepared by an IRS attorney and sets forth the legal claims of both the Plaintiffs and the IRS. This record also discusses the legal strategies and guidance as to the settlement of the Plaintiffs' tax liabilities. Accordingly, the IRS asserts Exemption 5 with the attorney-work product doctrine to withhold information created by attorneys, or on their behalf, in anticipation of litigation. The IRS cannot reasonably segregate and release any portion of this document. All of the non-exempt material in this document, to the extent there is any, is so intertwined with the exempt material in the document that it cannot reasonably be segregated while maintaining the sense of the document.

<u>Supplemental Disclosures</u>

After the Plaintiffs filed their opposition to the motion for summary judgment setting forth with greater clarity the records they were seeking, the IRS supplemented its responses and: (1) provided additional records to the Plaintiffs; (2) described in detail records it had already provided to the Plaintiffs (which Plaintiffs were still seeking); and (3) detailed prior exemptions it had invoked as grounds for refusing to disclose responsive information. Prior disclosures and information withheld based on applicable exemptions include the following:

    a. Prior to the litigation, the IRS provided the Plaintiffs with 812 pages responsive to their requests relating to their 2010 and 2011 tax returns (777 pages were provided in full and 25 released in part, that is, released with redactions);

and

      b. In their request and opposition, Plaintiffs have continued to request information that that the IRS has withheld based on cited exemptions. Such information is being withheld pursuant to FOIA Exemptions 7(E), Exemption 3, or Exemption 7(C)(*see also* 26 U.S.C. §§6103(b)(2), (b)(7)(E), (e)(7)), which exempt release of records or information compiled for law enforcement purposes where disclosure of the same would disclose law enforcement techniques and/or procedures, information which would reveal IRS investigatory techniques used to select returns for audit, and records containing identifying information of individuals in law enforcement;

    The IRS noted that some of the records requested by the Plaintiffs in regards to their 2010 and 2011 tax returns, if they exist, would not be within its custody and control. Such records would include Inspector General Reports, which would be in the custody and control of the Treasury Inspector General For Tax Administration ("TIGTA"). The IRS has provided information as to how Plaintiffs could make a FOIA request from TIGTA, which has its own, independent FOIA disclosure office and public liaison. In any event, an IRS Revenue Agent was instructed to make a search for any such records and the search returned no results.

    In its supplemental response, the IRS also detailed additional searches which were conducted in an attempt to find any further records relevant to Plaintiffs' request for information regarding their 2010, 2011, 2013 and 2014 tax returns. No additional responsive records were located. Additional searches were also conducted with respect to Plaintiffs' request for records relating to "FOIA Requests and Appeals." Those searches resulted in the identification of 68 additional pages of records which were released to Plaintiffs on December 17, 2018. Additional

searches were also made regarding Plaintiffs' request for records relating to their appeal of tax deficiencies and subsequent negotiations. The IRS identified 782 pages responsive to that request, 741 pages of which were released to the Plaintiffs in full on December 17, 2018. In total, 41 pages were withheld pursuant to FOIA Exemptions 5 or 6, which exempt from disclosure personal information (1 page which contained only a telephone number) and 40 pages which were withheld because they were protected by the attorney-client privilege and/or deliberate process privilege. The IRS response explains in detail its basis for asserting that the 40 pages are exempt as privileged.

As to Plaintiffs' request for records relating to a list of any individuals or government agencies to which any of their personal information was disclosed, the IRS did further research and determined that with respect to a previous FOIA request, it had released one page of records relating to the request and one page was partially withheld because it contained an IRS agent's personal information. The Plaintiffs never appealed the Government's response to that FOIA request.

Summary of Release of Records to Plaintiffs

The IRS's release of 713 full pages of responsive records to the Plaintiffs took place on April 7, 2017 (as stated previously, the IRS withheld nine pages in full). The Plaintiffs administratively appealed the Service's FOIA response by letter dated May 18, 2017. The IRS responded to the Plaintiffs' appeal on June 6, 2017 and upheld the original decision to withhold nine pages in full. On June 26, 2017, the Plaintiffs filed the instant Complaint. On October 18, 2017, the IRS, by and through the DOJ, Tax Division, released in full the further six pages of records previously described. On December 17, 2018, approximately 809 pages were released in full to the Plaintiffs, 68 pages relating to FOIA requests and appeals, and 741 pages relating to

Plaintiffs' request for information relevant to their appeal of tax deficiencies and subsequent negotiations (as state previously, the IRS withheld 41 pages in full).

## Discussion

### Whether the Government Conducted an Adequate Search

> To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents. The agency must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested and it cannot limit its search to only one record system if there are others that are likely to turn up the information requested. To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate. The affidavits must be reasonably detailed ... setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched. Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment.

*Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)(internal citations, citations to quoted cases and internal quotation marks omitted).

"An agency's affidavit is 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.' " *Maynard v. CIA*, 986 F.2d 547 (1st Cir. 1993)(citation to quoted case and internal quotation marks omitted). "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Id.*, at 559 (internal quotation omitted).

The Plaintiffs contend that the IRS search was deficient based on D. Niro's prior employment with the IRS and his knowledge of IRS protocol and procedures. I disagree. I find that the IRS, in a non-conclusory fashion, has described its records system, the scope of the various searches conducted, and the method by which the searches were conducted. I further find

that the IRS has established that it conducted a search that was "'reasonably calculated to discover the requested documents'" *Maynard*, 986 F.2d at 559 (citation to quoted case omitted). Plaintiffs' unsupported speculation about procedures and protocols once utilized by agents when D. Niro worked for the IRS is insufficient to rebut the detailed declarations submitted by the IRS. Because those declarations contain information sufficient to demonstrate that the IRS undertook a good-faith effort to design a search of its records that was reasonably calculated to return all documents responsive to the Plaintiffs' requests, the agency has met its burden of showing that it conducted an adequate search.

Application of the FOIA Exemptions in This Case

As described in the Wilson and Thomas Declarations and the IRS's supporting memoranda, approximately 45 pages of responsive records, in whole or in part, were withheld from the Plaintiffs. The "FOIA serves to expose the operations of federal agencies 'to the light of public scrutiny.' The statute embodies a broad policy in favor of disclosure, reflecting the notion that 'promot[ing] an informed citizenry ... is vital to democracy.' Nevertheless, there are nine categories of exemptions, which permit the government to withhold documents that are otherwise responsive to the request. The nine exemptions are to be construed narrowly, with all doubts resolved in favor of disclosure." *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 250 (1st Cir. 2013)(internal citations and citation to quoted cases omitted).

The IRS contends that all documents responsive to Plaintiffs' requests and subject to the FOIA were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiffs with all material in the public domain and with all reasonably segregable non-exempt information in the responsive records. The IRS has

represented that no reasonably segregable, non-exempt portions have been withheld from Plaintiffs.

Plaintiffs have not contested the exemptions invoked by the IRS. Moreover, upon my own independent review of the IRS's submissions, I find that they are sufficiently detailed, establish that appropriate procedures were followed and set forth with sufficient particularity the factual and legal justification for invoking the exemptions.

For the reasons stated, the Defendant's motion for summary judgment is *granted*.

### Conclusion

The Motion for Summary Judgment (Docket No. 24) is **granted**.

SO ORDERED.

    **/s/ Timothy S. Hillman**
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**